396 So.2d 374 (1981)
Nancy J. LEE, Individually and as Natural Tutrix of Tammy Lee and Wilson Lee
v.
CHURCH'S FRIED CHICKEN, INC.
No. 14057.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff/appellant.
Ben L. Guelfo, Baton Rouge, for defendant/appellee.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a suit in redhibition filed by Nancy J. Lee, individually and as natural tutrix of Tammy Lee and Wilson Lee, for the return of the $6.49 purchase price paid for allegedly contaminated chicken purchased from the defendant. Plaintiff also seeks damages and attorney's fees. From a judgment in favor of defendant finding that plaintiff had not established by a preponderance of the evidence that the physical discomfort she experienced was caused by the chicken sold by the defendant, plaintiff has appealed.
The record shows that on October 22, 1979, at approximately 6:00 p. m., Nancy Lee purchased a 20-piece bucket of fried chicken for $6.49 from the defendant. The chicken was taken home where she, her two minor children, her common law husband and her uncle commenced to eat it. After she had eaten one piece of chicken and proceeded to the second, she complained that the second piece was no goodit had a nasty taste. The two children also complained of the chicken. Plaintiff, Nancy Lee, began feeling nauseated and vomited. She was taken to Earl K. Long Hospital where she again vomited. She was advised to return home and place the chicken in the freezer.
The two young children complained of stomach aches but never vomited. Neither her common law husband nor her uncle complained of feeling bad. A neighbor testified that the chicken smelled tangy. The common law husband testified that the chicken smelled rotten, and there appeared to be worms at the bottom of the box.
It is apparent from the record that the remaining chicken was brought into the courtroom, though it was never offered into evidence, nor was any examination ever made of the chicken by any expert.
The day before the chicken episode, Nancy Lee was taken to Earl K. Long Hospital with an apparent overdose of high blood pressure medicine. At the trial she had a hard time remembering whether the overdose trip to the hospital was the day before the chicken episode or not.
In McCauley v. Manda Brothers Provisions Co., 202 So.2d 492 (La.App. 1st Cir. 1967), Judge Ellis as the organ of the court said:

*375 "Louisiana cases relative to the liability of a manufacturer or processor of food products fall into a number of general categories. Probably the largest category of these cases cover food products which are sold in sealed containers, such as capped bottles or cans. [Citations omitted].
* * * * * *
"A second category of cases are those in which the food product is prepared and sold for public consumption in restaurants, or across the counter in bakeries, confectionaries, and similar places. These cases include the well known case of Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A., N.S., 480 (1911); Lee v. Smith, 168 So. 727 (La. App. 1 Cir. 1936); MacLehan v. Loft Candy Stores, 172 So. 367 (La.App.Orl.1937); Kelly v. Ouachita Dairy Dealers Cooperative Assn., 175 So. 499 (La.App. 2 Cir. 1937); Ogden v. Rosedale Inn, 189 So. 162 (La.App.Orl.1939); Palmer v. Rosedale Catering Co., 195 So. 859 (La.App.Orl. 1940); McAvin v. Morrison Cafeteria, 85 So.2d 63 (La.App.1956); Gilbert v. John Gendusa Bakery Inc., 144 So.2d 760 (La. App. 4 Cir. 1962); and Love v. New Amsterdam Casualty Company, 175 So.2d 398 (La.App. 4 Cir. 1965).
"Liability in these cases is based on the proposition that the manufacturer-seller of unwholesome food is presumed to know its condition and is liable to the purchaser thereof who is made ill because of its consumption. As stated in the McAvin case, supra.
`This case involves the principle of law that the seller of foodstuffs is bound to warrant their wholesomeness and that every one should know of the qualities of the things he manufactures and sells and that the lack of such knowledge is imputed to him as a fault rendering him liable to the purchaser for any vices or defects of the things.'
"In these cases, the plaintiff carries the burden of showing that the food consumed was unwholesome or deleterious, that it was consumed, and that illness resulted therefrom.
"It would appear that the liability imposed by the Doyle case and the others cited is also one which is based in implied warranty, rather than tort, since there is no necessity for the plaintiff to show negligence on the part of the manufacturer or processor.
* * * * * *
"The courts have never compelled a plaintiff to produce an actual analysis of the food consumed in order to establish its unwholesome condition. Rather, the courts have been willing to infer the deleterious nature of the food consumed from the circumstances surrounding the illness. In all of the cases in which there has been successful recovery, the plaintiff has shown that the food was consumed by him, and that no other food which might reasonably be assumed to have caused the illness had been consumed within a number of hours before or after the consumption of the suspect product. The plaintiff has also had medical opinion to the effect that it was probable that his illness was caused by the consumption of the particular product involved. In addition, the successful plaintiffs in the above cases have been able to show some other independent circumstance, which tends to prove his case. In the Doyle case, supra, for instance, it was shown that the plaintiff's companion, who ate in the same place at the same time of the same products also became ill. In the MacLehan case, supra, the plaintiff partook of the same pie on two different occasions, and got sick on each occasion. In the McAvin case, supra, the plaintiff noticed that the shrimp salad involved had a bad odor and taste and ate only a small portion of it. In Ogden v. Rosedale Inn, supra, only those persons who consumed the suspect salad became ill. In the cases of Love v. New Amsterdam Casualty Company, supra, and Gilbert v. John Gendusa Bakery, *376 Inc., supra, foreign substances were found in the food consumed.
"In this case, plaintiff showed that he had had nothing to eat on the day of his illness except the slice of coconut pie which he had for breakfast some six hours prior to his illness. He testified that he was feeling well until shortly after he consumed the hot sausage sandwich and a carton of milk. No proof has been offered by any party to this case relative to the unwholesomeness of the milk. His physician testified that in his opinion the attack of acute gastroenteritis suffered by plaintiff was caused by the ingestion of the hot sausage sandwich. He was prepared to prove, and did in fact proffer evidence to the effect that two other persons, who consumed sandwiches which were made at the same time and under the same conditions as that consumed by him suffered similar illnesses."
In his written reasons for judgment the trial judge concluded that since other people had eaten from the same container of chicken, but none of them had gotten as sick as Nancy Wilson, she failed to prove her case by a preponderance of the evidence. Plaintiff argues that some chicken had been fried previously and was in the bottom of the chicken box, and the recently fried chicken was at the top. She claims she ate chicken from the bottom of the box and thus became ill. The record points out that the two young children complained of stomach cramps, but never became ill to the extent that they became nauseated. It is conceivable that the trial judge concluded that their stomach aches came about more from the discussion of the chicken and seeing their mother sick than from actually consuming any chicken. Considering that Nancy Wilson was the only one to become nauseated, and that she had been to the hospital the day before for a different illness, we must agree that the trial judge was correct in his finding that plaintiffs failed to prove their case by a preponderance of the evidence.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.